Today, De Beers, we have indicated to counsel that we have really one issue we would like addressed in our argument. Good morning, Your Honors, and may it please the Court. My name is Howard Bashman, and I represent class member and objector Susan Quinn. With the Court's permission, I would like to reserve four minutes for rebuttal. That's granted. Class counsel and counsel for De Beers have certainly overcome many impediments to reach the settlement that the district court approved, but we respectfully suggest that several insurmountable obstacles remain that necessitate overturning the class certification of this class action. This case is, at its essence, an antitrust action seeking predominantly damages. There are consumer – I'm sorry. Yes, counsel, there's also deceptive trade practices. There's other claims in the Sullivan case, correct? Right. There are a number of claims on Justin Richmond's deceptive trade practices. That's correct. But if you look at the district court's opinion at or around pages 15 through 18, you see that the claims that were certified were the state law antitrust claims that were asserted in the various cases. Do you think – is it not apparent that the district court was intending to certify the other issues, too? That is not apparent. What is apparent is that the district court was intending to dispose of all of the other claims through the settlement, Your Honor. But under this court's opinion in the Wachtell case, a trial court's opinion has to list and discuss which issues are being certified for purposes of the class action, and the only issues or claims that the district judge's opinion does discuss in that regard are the antitrust actions. The judge relies upon the Boghossian presumption, which applies in antitrust actions, and there's no getting around that in the judge's opinion. But nevertheless – Well, we're not going to litigate this case. It's a settlement class. So, I mean, aren't we dealing with all of these claims when you come right down to it? There's a release, a nationwide release being given, which may be one of the reasons that it ended up the way it was with the definition that it did. But, you know, this is a settlement class. Isn't that different? What the Ankem case of the U.S. Supreme Court stands for is that the only way that a settlement class is different for purposes of class certification is with regard to manageability. One unique feature of these cases is that they were all defaulted by the defendants before the time that the class certification issues arose. So there was going to be no manageability concerns in these cases whatsoever. Nevertheless, in the Leiter case – They weren't all defaulted, were they? I believe they were, Your Honor. Every last one of them? I believe that's correct. But the fact that they – when you said – when they came in and they said we're going to – they being De Beers – and said we're going to confess liability here and we're going to move forward, is it fair to presume that if they'd said we're going to confess liability on some points but we want to move forward and trial on some others that the court wouldn't have said, all right, I'll lift the default and we'll go to trial on the things we need to go to trial on? De Beers certainly maintained that one of the reasons it was settling the actions was in connection with that document, De Beers said it could have lifted the default. So you're right, that was De Beers' position. And it's my experience that courts often are willing to allow defaults to be lifted. But the fact remains that in the Sullivan action that gives this appeal its name, which was filed in the District of New Jersey, despite De Beers' default in that case, all that class counsel sought to have certified there was some 31 states that allowed indirect purchasers to either assert antitrust claims or Consumer Protection Act claims. And that's – in the New York action, the lighter action, the district court there found that no indirect purchasers could assert damages claims against De Beers, notwithstanding the default. So what AMCEM stands for, if nothing else, is that invalid claims, claims that don't exist under state law cannot be the subject of class certification in a federal court. Except AMCEM, so very different. I mean, here the whole focus would be on what the defendant did. And you've got a very different situation in AMCEM where it's, you know, what did the plaintiffs do? Did they seek treatment, diagnosis? You know, how bad is their condition? I mean, the differences are great between that kind of case and this case. And isn't an antitrust or deceptive trade practices case kind of the poster child for at least one common fact or legal issue predominates? I mean, exists as between them, therefore it predominates over the individual issues. Isn't this the poster child, if you will? Judge Rendell, I both agree and disagree with what you're saying. And so AMCEM does recognize that ordinarily, I believe is the word that is used in the majority opinion, ordinarily an antitrust action or a securities fraud action would not present these problems. But AMCEM was talking about direct purchaser antitrust actions, not indirect purchaser antitrust actions. And so if you look at the part of AMCEM where the Supreme Court says what we're dealing with here are exposure claims that certain states may recognize, other states may not recognize, you have the exact same situation here, where as the aptly named District Judge Diamond of the Eastern District of Pennsylvania wrote in the In Re OSB decision that we cite in our briefs, only 20 states and the District of Columbia recognize or allow indirect purchasers to assert antitrust claims under their laws. And that to us is similar to the situation that the Supreme Court found is impermissible in AMCEM, where in many states these exposure-only plaintiffs did not have claims under state law. Does this mean that if we have nationwide classes and let's say there's different statutes of limitation, we have to explore where a statute might have expired in a certain state so that their residents don't have a cause of action and we have to figure out conflicts of laws so that if someone's in Delaware, but they came to Sansom Street to buy their diamond and they actually would be precluded in Delaware, but not in Pennsylvania, I mean, do we do this when we certify nationwide classes? Do we test out the viability and the existence of the claim for each individual? And does this mean that then the district court judge had to do a complete analysis of every one of the 50 states to see if the plaintiffs had actual claims that they could pursue under their state laws? Is that what it means? Let me answer both questions one at a time, if I can. Judge Ambrose, District Judge Hornby of the District of Maine, did undertake such a 50- I know District Judge Hornby very well. Right, he's a wonderful gentleman. I sat next to him a few weeks ago at a meeting. He undertook a 50-state analysis of these types of claims in his in-ray new motor vehicles case, and so it is not an insurmountable obstacle to do so. And then, Judge Rendell, to answer your question, we think that if a statute of limitations has expired, but someone had a claim that existed under state law, that's a different type of a situation from someone who's in a state where they just don't have a claim at all whatsoever. And what we have here are states that don't recognize these types of claims. Indeed, the class counsel themselves acknowledged that in seeking certification of the Sullivan case when they came in and only asked for 31 states to be certified. It was relying upon the null default obtained in Madison County, Illinois State Court. Where a nationwide class was certified, right? Right, through the drive-by certification. Should that have any effect on our decision-making here? It certainly is not a preclusive outcome on the district court, because otherwise the district court would never have undertaken the Rule 23B inquiry himself, as was necessary to approve the settlement. So we acknowledge that there was a drive-by class certification in Madison County, Illinois in the default case. What do you mean? I mean, I think I know what you mean, but why don't you be explicit? What I mean is that this is a court that's notorious for certifying claims before the defendant even appears in cases that are not defaulted, let alone in cases that are defaulted. And what I'm saying is that in that court, as I understand it, all that is necessary is that you file a motion saying that this class should be certified together with your initial pleading, and the class is certified subject to later decertification. If I may, a question about the consumer protection claims that we started with. You're saying that the states without Illinois brick repealers, these folks couldn't have had any standing. But what about the unjust enrichment and consumer protection claims? Right. In the Sullivan case. Is the nationwide class okay for that? No, Your Honor, it's not. In the Sullivan case, it sought to certify those types of claims, and it only sought 31 states. And again, Sullivan is this case. Can you tell us that in Ohio, a claim would not exist for an indirect purchaser under their consumer protection law? Absolutely. In the Johnson against Microsoft case, the Supreme Court of Ohio ruled that any other type of claim that could be tacked on to an antitrust claim under Ohio law, such as unjust enrichment, consumer protection, and anything else, is not recognized in Ohio because the — With a descending justice who said, oh, yes, it is. Right. The chief justice and one other justice dissented. I mean, how are we supposed to figure these things out? Is this what a district court judge has to do? With all due respect, Judge Riddell, I think that's the easiest state to figure it out in, perhaps, because you have the Supreme Court of the state telling you what Ohio law is, adds the fact that two justices on a court that consists of, if I recall correctly, seven justices disagreed. You know, that doesn't stand for anything. So we have a subclass of Ohio purchasers who may have gone to New York to buy their diamonds, and therefore, who knows? Do we send this back for subclasses? Do we send this back for further negotiation because maybe the indirect purchasers who have a right of action get more money? And then De Beers says, well, the other people don't have any right of action, so knock off $50 million off the settlement. As matters stand today, you're absolutely right that the settlement treats purchasers in all states identically, as the plaintiff's brief, as the class counsel's brief concedes on pages 16 and 17. So if you come from a state where you don't have a claim, you get treated identically to someone who's from a state that does have a claim. But to answer your question — You didn't object to that, did you? Yes, we did. You did, too. We did object to that, and we argued that in our appearance in the district court. But to answer your question directly, that is what we believe at a minimum has to happen here, is that the certification is vacated and it's sent back to certify only the states that recognize these claims. Did warfarin sodium, our opinion in that, indicate that in a settlement you can get close, and close is close enough without going through the sort of careful parsing of every state law, every jurisdiction's law that you've described here? What that case recognized is that the Delaware consumer protection, consumer fraud statute applied to all purchasers of the drugs anywhere. So there you had a state's law that the district court found did apply to all of the transactions, so that everyone in that class did have a claim that was recognized under Delaware law, whether they purchased in Delaware or not. I see the red light is on. Can I just ask one more question? Finally, if the certification were vacated, if it was sent back for some classes, isn't the reality that the settlement will fall apart? I mean, De Beers, for lack of a better word, didn't they demand a global settlement? Isn't this why this happened? Number one, I can't answer directly whether the settlement will fall apart or not, because that's part of the case that I'm not involved in. But, again, if AmChem stands for nothing else, it's that whether a settlement is good or bad does not overcome the flaws that are present there or here in our view. Thank you. Thank you. Thank you. We'll hear from you on rebuttal. Good morning. May it please the Court. My name is Joseph Tobacco, and I represent the appellees. And I would have to echo Judge Rendell's words about the poster child, because the poster child is really what Judge Chesler did in this case. These litigations were pending for several years. They, of course, like other complex cases, they had many, many issues that were certainly part of this litigation. But the Court took its responsibilities very seriously, applied the existing law of the circuit at the time. Certainly, Warofin is right on point with this case. There's no question that the insurance brokerage decision, which Judge Chesler didn't have the benefit of reading, his decision really mirrors, in many respects, the analysis and the final Third Circuit opinion in insurance brokerage. Is it really on point, Mr. Tobacco, where you've got a case here where it's clear that more than half the jurisdictions in the United States would not have allowed the claim at all? They don't have Illinois repealer statutes. You're dealing with folks who, had they gone to state court, would have been shown the gate. How can it be that those people, by going into federal court, suddenly get substantive rights and share in a remedy? I think the premise that my colleague stated is incorrect. This was not strictly the claims that were brought here were much broader than antitrust claims. Well, let's focus on the antitrust claims for a minute, because that's what the district judge's opinion is all about, right? It's all about price fixing. And Sherman Act, one kind of relief, isn't it? Well, there's no question that a main focus, and I would certainly concede, but the judge did not ignore the fact, and he says it in his opinion on a couple of occasions, that in the null case, that this was a false and deceptive advertising claim. Let's stick with antitrust for a minute. And let's take New Jersey. This is a New Jersey district court. In New Jersey, if I understand correctly, under the substantive law of New Jersey, there would have been neither a right to the antitrust relief, no standing, nor would there have been a right under consumer protection because the New Jersey Consumer Fraud Act is interpreted in a way by those courts to say you can't go through the back door of consumer fraud to get what you couldn't get through the front door of antitrust relief. So in New Jersey, where this court sits, you couldn't have gotten either under the substantive law. So that leaves me to wonder, how could you possibly suddenly acquire substantive rights by going into federal court with a bunch of buddies? If this was strictly an antitrust case, I would agree with you. In fact, New Motor Vehicles was mentioned. I was involved in that case, and in that case, it was strictly an antitrust case. This case involves conduct that goes beyond antitrust. That's the difference here. Even the consumer fraud claim under New Jersey would have fallen, though, right? As a matter of substantive law, they couldn't have brought a consumer fraud claim because the New Jersey Supreme Court, I think it's a Sickles case that they approved. It was a lower court case, but they cited it with approval. It said you can't use consumer fraud as a way around the Illinois brick block, if I can say it that way, to get into court for an indirect purchaser kind of claim. I don't disagree with that, and the reason that I can stand here and say that Judge Tesler got it right is because the defendant, in the context of facing a certified class, remember, there was no certification in Morrison for that case. There was no certification insurance broker. But yet, if you just look at the null certification on its face, if you're a defendant, what do you do with that? You have a couple of choices. You could commit and maybe lift the default and maybe attack that and maybe say it, or you make the decision, represented by extremely experienced counsel, that we're going to make the economic decision to avoid the risk and the liability, and we're going to settle that case. That case involved a 50-state certification. So it's not just an antitrust case that's being settled. We brought the Sullivan case, no question, the antitrust theory and claim, but deceptive practice of false advertising. Diamonds are forever. The attack in that case was focused on the advertising. So that gives a whole new panoply of causes of action nationwide. You have unjust enrichment, you have... So null is what gives the foundation for a nationwide class? Well, it certainly is a major underpinning of that. And, of course, there was an open question in the lighter case because the lighter case involved primarily antitrust, and the district court there said, gee, if I apply Article 9, that's punitive, but there's a whole debate about an open question now about does Rule 23 trump Article 9 of the CPLR? So these are open issues, and does the defendant, as you said, I think, have to litigate these questions to get peace? Well, then you'd never have a settlement. And Judge Ambrose confronted some of those questions in the MetLife case years ago. These are not simple questions. They're difficult questions. And here you had Judge Chesler doing a very careful and artful job. It is true he probably could have... nothing is perfect. He could have gone on for pages and pages and analyzed the law of each state, but, you know, let's face it, the record he had in the district court, he had a compendium of eight different expert opinions talking about common impact. He had an overriding question about does the court have jurisdiction on impact. How can there be common impact, though, Mr. DeBacco? I don't want to speak for anybody else, but I'm struggling with that. How is there common impact if, under the substantive law of the state, there would be no right to relief? If you could not go into, we'll stick with New Jersey, but we could take Texas or Oklahoma or Connecticut or Washington or a number of others, if you couldn't get that relief, how can it be said that there's a common impact from the behavior of DeBeers when the legal rights associated or arising out of that behavior are vastly different jurisdiction to jurisdiction, and, indeed, in several jurisdictions, you'd have no right? I go back to the fact that this case that was brought and the case that was settled, and the case that was settled is identical to the case that was brought. In other words, the settlement class here is no broader than the cases that were brought. And the case that was brought, it goes beyond antitrust. It was strictly an antitrust price-fixing case where you had two co-conspirators and that's all that was alleged and that's all that was involved in, then maybe you'd have that issue. I'm not going to dispute that. But in Warofin, it was deceptive practices in terms of advertising and how the drugs are marketed. An insurance broker was the same kind of conduct. And here, in the Null case, you had the allegations that they engaged in a deceptive pattern of artificially false advertising. That's a different set of facts. There'd have to be an assumption that you could set the antitrust stuff aside, even though that's 99.9% of what Judge Chesler talked about. Set that aside, look at consumer fraud, and say, because Null said you could do this across the country, we're saying you can do this across the country. Well, again, in the context of settlement, in a full faith and credit is to be given any measure, what do you do when you have a certified litigation order of a court? Now, you can say, well, maybe the judge got it wrong or maybe he got it right. But do we want district court judges to get into the practice and require them to get into the practice of looking beyond litigated decisions and cases?  Is it a full faith and credit issue? I mean, is it a full faith and credit issue? This is not an enforcement of a judgment. This is a discussion by the district court about whether there's predominance and superiority. Sure. And you're not making the assertion, are you, that somehow there's a collateral estoppel effect to what the Null court did, are you? No, I'm not. And I'm saying that, unlike Warrefin, where you had no certification order, here you had three different certification orders in addition to the California certification and the ANCO certification. You had the Null certification. And it's the defendant. The defendant waives its right to dig in and attack those. What's the district court judge to do? Because those are substantive rights that were certified 50-state. So how could the defendant say, well, gee, I don't want a 50-state release because maybe someday someone could attack that certification order. We can never settle these cases. What Quinn respectfully requests while trying to talk herself out of the right to recover here, because she says she can't recover under Texas law, I don't really know what the motive is for the argument, but assuming that that is her position, how could any defendant get the kind of peace that it needs, pay the appropriate amount of money, and again, if you look at the context of a $300 million settlement, remember this class contains... Can I hold you up for a second? Sure. It sounds like what you're saying is that because, and this maybe goes to what Judge Ambrose was saying, because the Beers really insisted on a nationwide settlement that this is how it had to be. And I guess if that leads me to wonder whether that really makes any difference or not when it comes to substantive rights. No matter how much the Beers wants it, and no matter how willing they are to stipulate to be liable, that willingness, that desire, it might lead to a settlement, but is that a legally sound... I mean, isn't it as a legal matter just irrelevant how badly they want it? Absolutely. That's not the standard. The standard is, do they face a risk? However slight or however great, we're not going to sit here and second-guess the business judgment of the Beers in the settlement. We're sitting here saying when you're a district court judge and you're confronted by a landscape that includes a 50-state certification, includes claims that go well beyond antitrust, and a defendant that says, I am prepared to settle those claims rather than fight them. In that context, just like in Morrison, just like an insurance broker, and remember an insurance broker, there were claims that the district court had dismissed, the RICO claims the district court dismissed. Third Circuit in fact did the analysis and said, gee, you know, we can even find a way to certify those claims, even though the district court found them to be without merit at the lower level. How do you write the opinion here that this fits squarely within the predominance requirement? Well, there's certainly a predominant. We start with the fundamental predominance, which is does every single class member here, from Washington State to Alaska to Hawaii, the predominant question is, was the conduct of De Beers, as broad as it was as a monopolist, that raised the price worldwide of all diamonds by its conduct, coupled with the predominant question of, they set themselves up so they're not subject to the jurisdiction of the United States. Those two questions overwhelm in a common basis every other question. And is that as far as we look? I mean, there's a case law that says you have to have one common, you know, okay. At least one, yeah. So you've got it. Should we put blinders on as to every other aspect? Or maybe commonality is where the rest of the situations get taken into account. Maybe it isn't in predominance. I'm not sure. You know, it's, look. And isn't that why Warofin is really different from this case? Because all the class members did have one common, identical claim there. Well, they did. It's certainly the fact that it helped under Delaware. But think of the opposite effect. I mean, if you were to actually do the conflicts of laws, you would say, well, gee, does that mean a foreign national gets a free pass, whereas someone who happens to be incorporated in Delaware gets nailed? I mean, that practice couldn't make sense. Because certainly whether a 50-state certification, ultimately at the end of the day, in a litigation context would have stood up as irrelevant to the question of what do you do when you're confronted with these broad claims that are asserted. You're a federal district court judge. You have a 160-page special master's report with detailed findings that talk about the economics that demonstrate how the price of diamonds was inflated from the mines all the way through to the finished jewelry. You have all of this economic evidence that demonstrates economic commonality and methodology to get there versus nothing. What law would control De Beers' conduct? If you were to try this case, I think the court would have to do not the settlement context, but if you had to try the case. It might not be the plaintiff's. It might not be the plaintiff's choice of law. There would have to be a very careful assessment. I mean, obviously many diamonds come through New York. Many diamonds come through the other diamond centers. Would that be the conduct? If it's advertising, maybe Illinois law applies. I mean, it's not these things. One of the reasons that I think you have a settlement of $300 million in this case is because you have a number of very difficult issues. I mean, I know we're not here to talk about the Gersh practice, but a quick glance at the way Judge Chesley handled those first three Gersh practices tells you why we ended up in a settlement. Let me ask about the injunction piece of this if I can. Yes. Because you've said a couple times that it's clear that everybody suffered the same injury, but the objectors pressed the point pretty vigorously that your own experts made clear that there is not a common set of circumstances throughout the class period that, in fact, the beer's capacity to control the market dropped off dramatically, and at one point I think they quote your expert as saying that it was a competitive market. And if that is, in fact, what the evidence was, is it accurate to say that the people who bought at different times in this period all suffered the same injury, or is it more accurate to say, if your experts really said it, some people may have suffered an injury, but other people didn't because they bought in a competitive market? First off, let me just say something, and I was prepared in the 15 minutes I had to point out the three places where they quote our expert and they take it out of context. Our experts have never conceded that at any point during the class period there was ever a truly competitive market. The context in which they talked about is that perhaps in the ebb and flow between high and low tides, there were periods when there was more effect or less effect, but they never said that there was ever a point where there was a fully competitive market. When De Beers had the ability, as it did for a century, to control and raise prices for 100 years, it's a more difficult task, and the expert is in the context of trying to find those relative points of high and low tide, but there was never a concession of competition breaking out during the class period. After the class period, John Pazarka, which is one of our experts, said in 2006 after the injunction that was part of the settlement was in place, he noted that prices were headed in a more competitive direction. Even there he didn't say it's true competition. He used that as a measuring means, didn't he, to look at how to look at effect by saying, well, it was more competitive in this period than it was earlier, and so I can make some judgment about the impact. Pazarka actually found damages for every single year of the class period right to the end, and it was only after the fact, he was talking about 2006, after the class period ends that he said, gee, the injunction's in place, they were the easy rules that are in place. Maybe we're heading more towards a point where there's competition. There was never a concession. I can keep going, but there's no time, but I would certainly end by saying it's a silent majority here. You have major corporations that are members of this class. It's unusual that you wouldn't have opt-outs that would have stepped forward. You have 50 attorney generals that were state attorney generals that were notified. If they felt that my state was getting the short end because some other state was getting more money, don't you think they'd be here? I mean, it speaks volumes to the work that Judge Chesler did on this record. It's a very thorough record. He followed Third Circuit law. No abuse of discretion. It should be a firm curium. Thank you. Thank you. Mr. Bashman. Your Honors, just very briefly, class counsel brought to the attention of this Court by means of a Rule 28J letter, a First Circuit decision that issued November 2009 that they say stands for the proposition that where a defendant demands nationwide peace, it's possible to throw in states where the plaintiffs don't have any claims. That's the In Re Pharmaceutical Industry Average Hostile Price Litigation case. And I want the Court to know that the district judge in that case in a decision that's reported in the FRD report excluded those states not because the plaintiffs didn't have claims, but rather just because under the law of those states they couldn't bring a class action. So that case does not stand for the proposition you can just throw in states where the claims actually don't exist. Amchem. How do we know that the states where plaintiffs couldn't bring suit, how do we know that their law would apply? Maybe De Beers, I don't know what the law, where are they, South Africa? Correct. What's the law there? Maybe that law would apply and there would be no liability at all because there is no such law in South Africa, or maybe there are very stringent laws and that law would apply. Is this what a district court judge has to do? The way that the district judges who have sat on these cases that bring us here today have treated that is that the law of the state where the purchase had occurred applies. And we believe that that is the correct approach. And in the Leiter case, it was found that New York State does not allow these claims to be brought as a class action and that the claims don't exist under New York law. And as we said in Sullivan, only 31 states were sought to be the subject of class certification on the damages claims there. What Amchem says, contrary to opposing counsel's argument, is that the defendant's concessions to the presence of the class certification criteria are not controlling because that, of course, was a settlement case there where the defendant was conceding that the class certification was proper. Is Amchem your best case as far as you're concerned? We believe it is our best case as far as we're concerned. Thank you, Your Honors. Thank you. Can you speak for just a minute? Can you speak for a moment about the injunction piece of this? You heard Mr. Spakos say that there had never been any kind of concession by their experts that there was ever a competitive period during the market that's included as the class period. I want you to take on that factual issue. And then assuming that he's right, is your argument on that score fall? We don't concede that that's right. And, of course, in our opening brief we do give the quotations that we're relying upon from the class counsel's experts that do say that from 2006 forward the market had become competitive. And we point out why the existence of the injunction was not the reason given by the experts for that fact having come into existence, the competitive market. So the experts explain the reasons why the market became competitive and did not cite that an injunction issued just several months before was the reason for it. The new motor vehicle case, when the First Circuit decided that appeal, that was a similar situation where the basis for the injunctive relief no longer existed at the time the appeal was being heard. And the appellate court there sent the case back for Judge Hornby to consider whether the injunction should remain or not under the circumstances. That is our central argument for why the injunction does not give a reason for certification. But this is predominantly as it stands today a Rule 23b3 class where damages is the central focus. Would you complete the sentence that this is not a case where there is one common question of fact or law because? Because in many of the states that are included within the settlement, the class members don't even have a substantive claim under state law. Thank you. Thank you very much. The case is well argued. We'll take it under advisement. Thank you.